IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STACY EPPERSON-NORDLAND,                    Case No. 2:12-cv-01985-AA
                                                    OPINION AND ORDER
            Plaintiff,

        v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

            Defendant.
_____

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, Oregon 97293
        Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

John C. LaMont
Office of General Counsel - Region X
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

Franco L. Becia
Assistant Regional Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
        Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Stacy Epperson-Nordland brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND

This case has a long and complicated procedural history. Plaintiff filed her first applications for DIB and SSI on June 9, 1995. Tr. 16. Both applications were denied initially and upon reconsideration. Id. After a hearing, the Administrative Law Judge ("ALJ") issued a decision, on March 24, 1999, finding plaintiff not disabled within the meaning of the Act. Id. The Appeals Council accepted review and remanded the case for further proceedings. Id. On November 7, 2005, after a second administrative hearing, the ALJ issued another unfavorable decision. Id. On June 27, 2006, the Appeals Council denied review of the ALJ's 2005 decision. Id. Plaintiff did not file any further appeals thereafter. Id.

On July 31, 2007, plaintiff filed new DIB and SSI claims. Tr. 16, 123-32. After the applications were denied initially and upon reconsideration, plaintiff timely requested a hearing before an ALJ. Tr. 82-86, 91-95. On August 30, 2010, a third ALJ hearing

was held, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 32-56. On September 19, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 16-27. After the Appeals Council declined review, plaintiff filed a complaint in this Court. Tr. 1-5.

## STATEMENT OF FACTS

Born on December 21, 1964, plaintiff was 29 years old on the alleged onset date of disability and 45 years old at the time of the 2010 hearing. Tr. 26, 39, 123, 130. Plaintiff completed the eleventh grade and later obtained her GED; she also attended two years of college. Tr. 39, 149. She previously worked as a bookkeeper. Tr. 145. Plaintiff alleges disability as of June 15, 1994 due to "arthritis, fibromyalgia, allergies, insomnia," and depression, which are accompanied by pain, fatigue, "poor focus, [and] poor concentration." Tr. 40-41, 123, 130, 144.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's]

conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the

Page 4 - OPINION AND ORDER

[Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d).    If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e).    If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.    At step five, the Commissioner must establish that the claimant can perform other work that exists in singificant numbers in the national and local economy.    <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).    If the Commissioner meets this burden, the claimant is not disabled.    20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 8, 2005, the date after the Commissioner's previous final decision. Tr. 19.    At step two, the ALJ determined that plaintiff had the following severe impairments: "[f]ibromyalgia, reactive airways disease, pain disorder, depressive disorder and a history of obesity." <u>Id.</u>    At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. <u>Id.</u>

Because she did not establish disability at step three, the

Page 5 - OPINION AND ORDER

ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work, but was limited to only "superficial interaction with the public, supervisors and co-workers," and "unskilled work and routine tasks." Tr. 21. In addition, plaintiff "should avoid concentrated exposure to fumes, odors, dusts, gasses and humidity." Id.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 26. Finally, at step five, the ALJ concluded that, based on the VE's testimony, plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as garment sorter, cannery worker, and electronics worker. Id. Accordingly, the ALJ found that plaintiff was not disabled under the Act. Tr. 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) dismissing her DIB claim and assessing her SSI claim from November 8, 2005 forward, despite the fact that her alleged onset date is June 15, 1994; (2) improperly discrediting her subjective symptom testimony; and (3) failing to incorporate restrictions for all of her limitations in the RFC.[1]

---

[1] While plaintiff directly challenges the ALJ's assessment of the medical opinion evidence from Stewart Swena, M.D., she does not expressly dispute the RFC. Nevertheless, in order to provide the most complete review of this appeal, the Court interprets plaintiff's argument as challenging the RFC, which is contingent upon restrictions outlined in the medical evidence.

I.    Adjudication Date

Plaintiff first contends that the ALJ evaluated the wrong adjudication period for her claims.  Specifically, plaintiff argues that the Commissioner's previous final determination that she was not disabled from June 1994 though November 2005 should not preclude her from obtaining benefits during that period because the ALJ did not make any specific findings regarding "the issue of new and material evidence, or whether the same facts are alleged." Pl.'s Opening Br. 8.

The Act "grants to district courts jurisdiction to review only 'final decisions' of the Commissioner." Klemm v. Astrue, 543 F.3d 1139, 1144 (9th Cir. 2008) (citing 42 U.S.C. § 405(g)); see also 42 U.S.C. § 405(h) ("[t]he findings and decision of the Commissioner [made after a hearing] shall be binding upon all individuals who were parties to such hearing").  Thus, res judicata applies to bar reconsideration of prior claims where the Commissioner has previously made a final decision premised "on the same facts and on the same issue or issues."    20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1).    Nonetheless, "a prior, final, determination denying benefits does not preclude a finding the claimant was disabled during the previously-adjudicated period where there is new and material evidence applicable to that period." Sims v. Astrue, 2010 WL 619239, *14 (D.S.C. Feb. 18, 2010) (citing SSR 68-12A, available at 1968 WL 3926).

Similarly, a prior claim may be reopened within a certain time frame or the presumption of continuing non-disability may be

overcome based on changed circumstances, which can include the existence of new and material evidence evincing that the claimant's condition has worsened. See SSR 97-4, available at 1997 WL 740404 (interpreting Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988)); see also Fair v. Bowen, 885 F.2d 597, 600 (9th Cir. 1989) (citing Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986)). In this context, "[m]edical evaluations conducted after a prior adjudication necessarily constitute new and material evidence." Nursement v. Astrue, 477 Fed.Appx. 453, 454 (9th Cir. 2012) (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172-73 (9th Cir. 2008)).

The ALJ's 2005 decision became administratively final and binding when the Appeals Counsel denied plaintiff's request for review. Tr. 16. Plaintiff filed new DIB and SSI applications in 2007, asserting the same mental and physical impairments, as well as the same alleged onset date, as her prior claims.[2] Tr. 123, 130. Yet plaintiff acknowledges that she cannot reopen the Commissioner's prior final decision because her current applications were filed outside of the requisite period. See Pl.'s Reply Br. 3[3] ("[p]laintiff does not claim a right to reopening of her prior determination, only that res judicata does not bar an

---

[2] Plaintiff's counsel was unable to obtain the prior ALJ decision or the accompanying record. See Pl.'s Opening Br. 8. Accordingly, while there is medical evidence in the current record dating as far back as 1994, there is no documentation of plaintiff's previous DIB and SSI claims.

[3] Because plaintiff did not numeralize her reply brief, the Court refers to the page numbers assigned in the docket.

adjudication of her present [DIB] application due to the existence
of new and material evidence"). As such, plaintiff is prohibited
from obtaining disability benefits during the period covered by the
Commissioner's earlier decision unless: (1) she establishes changed
circumstances that overcome the presumption of continuing non-
disability; and (2) presents new and material evidence that
pertains to the previously-adjudicated period.

Regarding the first requirement, the ALJ found that plaintiff
"presented new and material evidence revealing that [her] condition
has somewhat worsened since the previous decision was issued[,]
[such that] the presumption of continuing nondisability does not
apply." Tr. 17. The record supports the ALJ's conclusion; there
is ample evidence from after the ALJ's 2005 decision that documents
plaintiff's ongoing health issues. See, e.g., Tr. 188-522.

Concerning the second requirement, the only evidence of record
that inheres to the previously-adjudicated period is an opinion
letter from plaintiff's treating physician, Dr. Swena, dated August
27, 2010; the doctor indicates therein that plaintiff's impairments
existed at a disabling level since on or before December 31, 1998.
Tr. 961-63. As discussed in greater detail below, the ALJ properly
rejected Dr. Swena's 2010 evaluation and concluded that, without
such evidence, plaintiff's DIB claim "is effectively dismissed as
there is no way to establish disability on or before [plaintiff's]
date last insured of December 31, 1998."[4] Tr. 17, 24. The Court

_____

    [4] To recover DIB, plaintiff was required to establish that
she suffered from a disability prior to December 31, 1998, the
date last insured. Tr. 17; Jensen v. Astrue, 2012 WL 4470507, *1

notes further that Dr. Swena provided an opinion letter on behalf of plaintiff's prior applications, dated March 26, 2003, that was analogous to his 2010 assessment.  <u>See</u> Tr. 969.  Therefore, while plaintiff is correct that the ALJ "did not [formerly] dismiss the DIB claim as barred by res judicata," the record supports such an inference.  Pl.'s Opening Br. 8; <u>see also</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755 (9th Cir. 1989) ("[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").

This inference is especially appropriate in light of the fact that plaintiff does not argue that her current DIB and SSI applications are premised on different symptoms and/or impairments, or accrued on a different alleged onset date; instead, she merely contends that her preexisting conditions have worsened.  <u>See</u> <u>generally</u> Pl.'s Opening Br.; Pl's Reply Br.; <u>compare</u> <u>Lester v.</u> <u>Chater</u>, 81 F.3d 821, 827-28 (9th Cir. 1995) (declining to apply res judicata to a previously-adjudicated period where the claimant raised a mental impairment not considered pursuant to the prior application and turned 50, such that he was in a different age category), <u>with</u> <u>Chamberlin v. Astrue</u>, 2012 WL 407432, *2-4 (D.Or. Feb. 8, 2012) (applying res judicata to a previously-adjudicated period where the ALJ properly rejected new evidence applicable to that period and the claimant's "current applications . . . raise

---

n.2 (D.Or. Sept. 25, 2012).  Regardless of the alleged onset date, plaintiff "is not eligible for DIB for any month preceding . . . 12 months before her application."  <u>Jensen</u>, 2012 WL 4470507 at *1 n.2.  <u>Id.</u> (citing 20 C.F.R. § 404.621).  Unlike DIB, "SSI benefits are not dependent upon insured status."  <u>Id.</u>

the same issues on the same facts as the previous application"). As such, even assuming that the ALJ erred by failing to make a specific finding regarding res judicata, because there in no new and material evidence in the record relating to the previously-adjudicated period, such an error was harmless. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); see also Williams v. Astrue, 2011 WL 3875615, *1 n.1 (M.D.Ala. Aug. 31, 2011) (where res judicata governed, "the relevant period remaining for adjudication began on the date after the prior [ALJ] decision") (citation and internal quotations omitted). Accordingly, the ALJ's decision is affirmed in this regard.

II.  Plaintiff's Credibility

Plaintiff next asserts that the ALJ failed to provide a clear and convincing reason for rejecting her subjective symptom testimony regarding the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not

credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the 2010 hearing, plaintiff testified that she was primarily unable to work due to "[p]hysical pain [and] [d]epression." Tr. 39-40. She also testified that she suffered from of "insomnia, . . . fibromyalgia, asthma, allergies, COPD, emphysema[,] [and] menstrual problems," for which she was prescribed a variety of medications that were accompanied by side-effects. Tr. 41-42, 44. Plaintiff explained that she had been to the emergency room several times associated with these conditions, although she could not specify precisely why or when. Tr. 42-43. Plaintiff currently lives with her 16-year old son and "go[es] to the doctor at least once a month, sometimes more" for her physical impairments. Tr. 40-41, 48. She clarified, however, that she received mental health counseling "on and off through the years, but because of insurance" only resumed such treatment in August 2010. Tr. 48. Plaintiff stated that she continued to smoke cigarettes, but had recently cut back from two packs to half a pack per day; she "attempted several times to quit," but was unable to,

in part, because she lived with other smokers.  Tr. 51.

Regarding her functional abilities, plaintiff indicated that she could perform minor chores and independently go the grocery store "but . . . only to get a few things." Tr. 46-45.  Her husband, who was no longer living with her, performed "all the housework [and] major cooking." Tr. 47.  Plaintiff endorsed the inability to sit "for a two-hour shift," reach, lift ten pounds throughout an eight hour day, bend over "once in a while," and climb stairs.[5]  Tr. 45-48.

After summarizing plaintiff's testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully credible for the following reasons: (1) failure to seek medical treatment; (2) poor work history; (3) activities of daily living; and (4) continued smoking.  Tr. 21-23.

Notably, the ALJ found that, while plaintiff "allege[d] mental health concerns, and the record reflects that she has been diagnosed with at least a depressive disorder and prescribed medication for her symptoms[,] there is no longitudinal history of mental health diagnosis, mental health treatment, [or] accurat[e] assess[ment] of the severity of [plaintiff's] condition." Tr. 23. Failure to seek medical treatment is a clear and convincing reason

---

[5] Beyond these statements and scant references in the reports of her examining doctors, there is no other evidence regarding plaintiff's daily functioning.  In fact, the record does not contain an adult function report and/or pain or fatigue questionnaires.

to reject a claimant's subjective statements. <u>Burch</u>, 400 F.3d at 681. Nevertheless, before drawing a negative inference from a claimant's failure to seek treatment, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, <u>available at</u> 1996 WL 374186.

Here, the record supports the ALJ's conclusion. Plaintiff admits that she has been aware of her alleged mental impairments for over a decade. <u>See</u> Pl.'s Opening Br. 16 (citing Tr. 563). Yet there is no evidence in the 1417 page record reflecting any mental health treatment from 1994 to present.[6]  In fact, even though plaintiff stated at the 2010 hearing that she recently reinitiated counseling, she did not seek to include this evidence in the record or otherwise submit any such documentation to the Appeals Council pursuant to her request for review. <u>See</u> Tr. 5. Moreover, while plaintiff was referred to mental health services by Dr. Swena in January 2006, there is no indication that she followed up on this

---

[6] Contrary to plaintiff's assertion, the fact that "Dr. Swena was following Plaintiff's depression [by] refilling her medications" and documenting her subjective statements regarding the severity of her symptoms does not demonstrate a history of longitudinal mental health counseling or treatment. Pl.'s Opening Br. 16; <u>see also</u> Tr. 970. The only evidence in the record that refers to plaintiff's previous mental health treatment is from the one-time psychodiagnostic examination performed by Stephen Condon, Ph.D., in March 2008, during which plaintiff reported seeing a social worker "for 6 to 12 sessions" in approximately 2005 and obtaining family counseling in 1995; she also reported visiting a psychologists in 1995 and 2008 for "disability evaluation[s]." Tr. 513. At best, this evidence demonstrates that plaintiff sought mental health treatment outside of the current adjudication period or attended one-time assessments pursuant to her DIB and SSI applications. <u>See</u> Tr. 516-17.

referral until August 2010, immediately preceding her most recent administrative hearing.  Tr. 48, 358.

Although plaintiff argues that she only sought "mental health treatment [intermittently due to] her insured status" and "had some difficulty accessing county services," the evidence is to the contrary.  Pl.'s Opening Br. 16-17 (citing Tr. 513[7]).  The record contains voluminous and continuous treatment notes throughout the relevant time period for plaintiff's physical impairments, reflecting that she had no problem obtaining services when she wanted or believed she needed them.  See, e.g., Tr. 724-97 (Dr. Swena's chart notes from 2008 and 2009, intimating that, with the exception of treatment for certain transitory conditions, plaintiff went to the doctor at least every month for medication management and/or refills); see also Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012).  Thus, as the ALJ concluded, this failure to seek psychological treatment belies plaintiff's statements that her depression rendered her unable to work.

In addition, the ALJ determined that plaintiff's "work history, or lack thereof" undermined her subjective testimony.  Tr. 23.  A claimant's poor work history is relevant to the issue of credibility.  See Thomas, 278 F.3d at 959 (ALJ gave a clear and convincing reason for discounting claimant's testimony based on the claimant's "extremely poor work history," showing "little

---

[7] During her evaluation with Dr. Condon, plaintiff stated that she "can't go . . . . to the county mental health program" for services because she "[does not] like the people there."  Tr. 513.

propensity to work in her lifetime"). As the ALJ noted, plaintiff was employed most recently from approximately 1990 through 1994, but has not worked or attempted to work since that time; instead, she "referred to herself as a stay-at-home mom and . . . homeschooled her children." Tr. 23, 135, 145; <u>see also</u> Tr. 519, 594. Essentially, the record reveals plaintiff has not worked for the majority of her adult life.

Plaintiff's assertion that the ALJ's "focus on her lack of work history was inappropriate" because her "lack of earnings during this time . . . related to her staying at home with her children, but also completely coincides with her period of disability" is unavailing. Pl.'s Opening Br. 17. As discussed above, the ALJ properly determined that the Commissioner's prior final decision, finding that plaintiff was not disabled between June 1994 and November 2005, was entitled to preclusive effect. In other words, the ALJ did not find, and the record does not indicate, that plaintiff was disabled during the previously-adjudicated period. Even assuming, however, that evidence relating to plaintiff's work history was capable of more than one rationale interpretation, because the ALJ's finding was reasonable, it must be upheld. <u>See</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1198 (9th Cir. 2004).

The foregoing discussion reveals that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective statements regarding the extent of her limitations. Although the Court has not discussed

Page 16 - OPINION AND ORDER

all of the reasons offered by the ALJ for finding plaintiff not credible, even if the ALJ erred in relying on those reasons, such an error was harmless. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (citations omitted). Therefore, the ALJ's credibility finding is affirmed.

III. RFC Assessment

Plaintiff also argues that the ALJ's RFC failed to adequately account for all of her limitations, especially those articulated in Dr. Swena's 2010 disability assessment. The RFC is the most that a claimant can do despite his or her limitations. See 20 C.F.R §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

A. Medical Opinion Evidence

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester, 81 F.3d at 830. In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.2001). More weight to afforded to

"opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Id. (citations omitted). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

In March 2002, Dr. Swena began treating plaintiff, on at least a monthly basis, for management of her fibromyalgia, insomnia, depression, anxiety, asthma, chronic cough, and other periodic conditions. Tr. 961; see e.g. Tr. 710-846. On August 27, 2010, Dr. Swena completed a check-the-box form prepared by plaintiff's attorney in support of her disability applications. Tr. 961-63. Dr. Swena indicated that plaintiff would be able to complete the following tasks "throughout an eight-hour workday and five-day workweek, on an ongoing basis": occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk for 15 minutes at one time and for a total of two hours, and sit for 30 minutes at one time and for a total of three hours. Tr. 962. The doctor also endorsed pushing and pulling limitations in plaintiff's upper and lower extremities, and opined that she could: never climb, stoop, bend, reach, crouch, or crawl; occasionally balance and kneel; and frequently handle, finger, and feel. Id. Dr. Swena checked boxes denoting that plaintiff's pain,

fatigue, weakness, shortness of breath, nausea, nervousness, and depression would frequently "interfere with the attention and concentration needed to perform even simple work tasks." Tr. 963. As a result, Dr. Swena reported that plaintiff would need "to miss more than two days per month from even a routine, simple and sedentary job." Id. Lastly, Dr. Swena checked the box signifying that these impairments "existed with the same severity on or before 12/31/1998." Id.

The ALJ afforded Dr. Swena's opinion "little weight" because he "provided no explanation or . . . foundation for his responses, nor did he relate his conclusions to any medical chart notes or medical evidence in the record despite the questionnaire giving [him] the opportunity to do so." Tr. 24. Further, the ALJ found that "Dr. Swena's understood proposition that [plaintiff] could not perform competitive employment is not accepted as the evidence does not demonstrate an inability to perform simple and basic tasks." Id. In sum, the ALJ rejected Dr. Swena's assessment because it did not contain any reasonable explanation for the prescribed limitations, was unsupported by clinical findings, and inconsistent with medical evidence from Dr. Condon and Kim Webster, M.D., which demonstrated that plaintiff was capable of performing jobs consistent with the RFC. Tr. 23-25; see also Tr. 512-22 (assessments from Drs. Condon and Webster).

Initially, the Court rejects plaintiff's contention that "[i]t [was] unreasonable to expect a doctor with such an extensive treatment relationship to cite to the particular objective testing

Page 19 - OPINION AND ORDER

that led him to form these summary conclusions of his patient's functioning." Pl.'s Opening Br. 11.  It is well-established that an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings.  See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"); Thomas, 278 F.3d at 957 (ALJ "need not accept the opinion of . . . a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); see also Holohan, 246 F.3d at 1202.  Additionally, Dr. Swena's treating relationship with plaintiff consisted mostly of prescribing and refilling her medications, and his chart notes primarily reflect her subjective statements; the only cursory objective evaluations that he performed on plaintiff yielded results largely within the normal range.  See Tr. 337-63, 603-619, 633-65, 695-846.  Moreover, clinical tests indicate little in the way of objective limitations and plaintiff does not now challenge the ALJ's heavy reliance on this evidence.  See, e.g., Tr. 512-22; see generally Pl.'s Opening Br.; Pl.'s Reply Br.  In sum, even accepting plaintiff's argument, neither Dr. Swena's findings nor the other objective medical evidence of record supports Dr. Swena's disability assessment.

Thus, as the ALJ noted, Dr. Swena's opinion is conclusory and not accompanied by reference to any objective findings.  Tr. 961-63.  The only narrative descriptions are brief, fragmented

sentences that do not refer to the doctor's own chart notes or any other evidence.  Id.  Accordingly, the ALJ provided legally sufficient reasons, supported by substantial evidence, to reject the opinion of Dr. Swena.  See Crane, 76 F.3d at 253; Thomas, 278 F.3d at 957.  The ALJ's decision is therefore affirmed as to this issue.

    B.  Medication Side-Effects

    The ALJ must consider any documented medication side-effects and their related limitations in assessing a claimant's ability to work.  See 20 C.F.R. § 416.929(c)(3)(iv); see also SSR 96-7p, available at 1996 WL 374186.  The claimant, however, is required to present objective evidence of the alleged side-effects and cannot simply rely on subjective allegations alone.  See Thomas, 278 F.3d at 960.

    There is a plethora of evidence in the record before the Court indicating that plaintiff is heavily medicated and experiences significant side-effects from the prescribed regimen.  For instance, plaintiff takes numerous narcotic pain medications in combination with anti-anxiety, depression, asthma, insomnia, and other prescriptions.  See, e.g., 283, 510, 656, 710-64, 782-97.  As one medical examiner observed, plaintiff "is on the largest dose of opiates of any patient I have ever seen with fibromyalgia."  Tr. 501; see also Tr. 601 (2009 assessment from Wayne Strauss, M.D., Ph.D., noting plaintiff's "high narcotic use"), 666 (2009 emergency room report reflecting that plaintiff "is on a large number of medications").

Page 21 - OPINION AND ORDER

Plaintiff's statements at the hearing, as well as chart notes from her medical providers, demonstrate that she suffers from routine and negative ramifications associated with these medications, such as difficulty focusing and balancing, clouding of thought, and decreased reaction time. See, e.g., 41-44, 47, 845, 962. Other evidence of record implies that plaintiff may be experiencing reliance on or addiction to opiates and, further, she has repeatedly accidentally overdosed on her prescriptions, resulting in numerous hospital stays. See Tr. 1218 (2007 emergency room report diagnosing plaintiff with "[c]hronic narcotic use" and a "history of accidental overdose," and noting that she insisted on receiving "pain medication [and] was adamant that only Dilaudid would work"), 624-25 (2010 emergency room report signifying that plaintiff's need for medical treatment "was likely due to Duragesic," a strong narcotic, and recommending that her "dose . . . be decreased"), 669 (2009 emergency room report noting that plaintiff "is very concerned about being off the Duragesic for very long as she has a history of significant withdrawal"); see also Tr. 42-43, 237-42, 312, 421, 661, 1237.

As such, the record is replete with evidence establishing that plaintiff experienced ongoing and, at times, extreme medication side-effects that resulted in functional limitations. Yet the ALJ wholly failed to account for these limitations in the RFC or otherwise address how plaintiff's medication side-effects, especially in conjunction with her chronic pain, depression, and insomnia, would not result in any physical or mental impairments.

See Tr. 16-27. Critically, plaintiff's RFC for a limited range of light work does not include any physical restrictions whatsoever, let alone ones that could reasonably account for these side-effects, such as limiting plaintiff to work that does not require operating automobiles and/or heavy machinery, or that does not involve climbing, balancing, or heights. Tr. 21. Without consideration of her prescriptions and their accompanying side-effects, it is unclear whether plaintiff could safely perform the jobs identified by the VE.

The ALJ's total failure to include restrictions for the collective effect of plaintiff's impairments constitutes harmful legal error. See Osenbrock, 240 F.3d at 1163-64. Nevertheless, there are outstanding issues that must be resolved prior to the award of benefits; it is not clear from the record what impact the erroneously omitted limitations will have on plaintiff's ability to work. Additionally, because the issue of how plaintiff's medications interact, both with each other and her underlying impairments, is complicated and therefore requires medical expertise, the record would benefit from further development. Thus, this case should be remanded for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). Upon remand, the ALJ is required to obtain testimony from a medical expert regarding limitations associated with plaintiff's medications. If necessary, the ALJ must then revise his RFC assessment. Finally, the ALJ shall incorporate any revised findings into his step four and five determinations.

**CONCLUSION**

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this _____22ND_____ day of October, 2013.


_____
Ann Aiken
United States District Judge